UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ISMAEL DUKE, | § | No. 5:16-CV-151-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| in her official capacity as Acting | § | |
| Commissioner of the Social Security | § | |
| Administration, | § | |
| | § | |
| Defendant. | § | |

ORDER (1) ADOPTING THE REPORT AND RECOMMENDATION;
(2) DENYING PLAINTIFF'S APPEAL; AND
(3) AFFIRMING THE COMMISSIONER'S DECISION

Before the Court is a Report and Recommendation ("Report") filed by United States Magistrate Judge Pamela A. Mathy, affirming the decision of the Social Security Commissioner ("Commissioner") denying Plaintiff Ismael Duke's ("Plaintiff") application for disability insurance benefits.  (Dkt. # 18.)  On September 20, 2016, Plaintiff filed his objections to the Report.  For the reasons that follow, the Court **ADOPTS** the Report, **AFFIRMS** the Social Security Administration's ("SSA") final decision, and **DISMISSES** the case with prejudice in favor of Defendant Carolyn Colvin, in her official capacity as Acting Commissioner of the SSA ("Commissioner").

1

BACKGROUND

Since Plaintiff has not objected to the factual background in the Report, the Court adopts the Magistrate Judge's rendition of the relevant facts in whole.  Nevertheless, the Court will provide a brief overview of the case. On November 15, 2012, Plaintiff filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act.  ("Tr.," Dkt. # 11 at 151, 199.)

Plaintiff alleged disability beginning January 1, 2010, due to impairments of depression, bipolar disorder, carpal tunnel syndrome, left shoulder arthritis, and degenerative arthritis.  (Id. at 151, 199.)  Plaintiff requested an administrative hearing after his claims were denied initially, and upon reconsideration.  (Id. at 100, 113, 187.)  On April 2, 2014, Administrative Law Judge ("ALJ") Karen McCoy conducted a hearing and heard testimony from Plaintiff and a vocational expert ("VE").  (Id. at 43–65, 60–72.)  On July 25, 2014, the ALJ issued her decision that Plaintiff was not disabled, denying DIB. (Id. at 12–23.)  Plaintiff requested review by the Appeals Council, which was denied on December 15, 2012, making the ALJ's decision the final decision of the Commissioner.  (Id. at 1–6.)

On February 12, 2016, Plaintiff filed his complaint in this Court requesting that the Court reverse the Commissioner's decision and remand the

matter for further administrative proceedings.  ("Compl.," Dkt. # 5.)  On June 26,

2016, Plaintiff filed his initial brief asserting the ALJ's decision is not supported

by substantial evidence and that the ALJ erred by (1) failing to consider Plaintiff's

70% Veteran's Administration ("VA") disability rating; (2) finding that Plaintiff

could perform the physical demands of his past work as a dental lab technician;

(3) finding that Plaintiff could perform the mental demands of his past work as a

dental lab technician; and (4) improperly discounting Plaintiff's subjective

complaints.  (Dkt. # 13.)  The Commissioner responded that the ALJ's decision

applied the correct legal standards and was supported by substantial evidence.

(Dkt. # 16.)  On August 22, 2016, Plaintiff filed his reply brief, re-asserting the

first three arguments he raised in his initial brief.  (Dkt. # 17.)

        After reviewing the administrative transcript, the ALJ's findings, and

the relevant law, the Magistrate Judge recommended that the Court affirm the

Commissioner's decision, finding the ALJ did not commit reversible legal error

and that her decision was supported by substantial evidence.  (Dkt. # 18.)  On

September 20, 2016, Plaintiff timely filed his objections to the Report.  (Dkt. # 20.)

<u>LEGAL STANDARD</u>

I.    <u>Standard of Review</u>

    A. <u>Review of a Magistrate Judge's Report and Recommendation</u>

        Where neither party objects to the Magistrate Judge's findings, the Court reviews the Report and Recommendation for clear error.  <u>United States v. Wilson</u>, 864 F.2d 1219, 1221 (5th Cir. 1989).  However, any party may contest the Magistrate Judge's findings by filing written objections within fourteen days of being served a copy of the Report and Recommendation.  28 U.S.C. § 636(b)(1)(C).  The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. <u>Thomas v. Arn</u>, 474 U.S. 140, 151 (1985).  A district court need not consider "[f]rivolous, conclusive, or general objections."  <u>Battle v. U.S. Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987) (quoting <u>Nettles v. Wainwright</u>, 677 F.2d 404, 410 n.8 (5th Cir. 1982), <u>overruled on other grounds</u> by <u>Douglass v. United States Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996)).

        When a party has raised specific objections to any of the Magistrate Judge's findings in a Report and Recommendation, the Court conducts a de novo review of those findings pursuant to Federal Rule of Civil Procedure 72.  Fed. R. Civ. P. 72; <u>see also</u> 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a

de novo determination of those portions of the report or specified proposed

findings or recommendations to which objection is made.").

     B. <u>Standard of Review of Commissioner's Determination</u>

     The Court's review of the Commissioner's denial of DIB is limited to

whether the decision is supported by substantial evidence and whether the

Commissioner applied the proper legal standards in evaluating the evidence.

<u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000).  Substantial evidence is "such

relevant evidence as a reasonable mind might accept to support a conclusion.  It is

more than a mere scintilla and less than a preponderance."  <u>Id</u>. (quoting <u>Ripley v.</u>

<u>Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995)).  No substantial evidence will be found

only if no credible evidence or medical findings support the decision.  <u>Boyd v.</u>

<u>Apfel</u>, 239 F.3d 698, 704 (5th Cir. 2001).

     The Commissioner's findings must be affirmed if they are supported

by substantial evidence.  <u>Masterson v. Barnhart</u>, 309 F.3d 267, 272 (5th Cir. 2002).

The Court must not reweigh the evidence or substitute its judgment for that of the

Commissioner's.  <u>Newton</u>, 209 F.3d at 452.  Any conflicts in the evidence are for

the Commissioner to resolve.  <u>Id</u>.  (citing <u>Brown v. Apfel</u>, 192 F.3d 492, 496

(5th Cir. 1999)).  In determining whether the Commissioner's decision is supported

by substantial evidence, the Court examines the record in its entirety and weighs

the following four elements: (1) objective medical facts, (2) diagnoses and

opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience.  Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

DISCUSSION

I.   Entitlement to Disability Benefits

Every individual who is insured for DIB, has not reached the age of retirement, has filed an application for DIB, and is under a disability is entitled to receive DIB.  42 U.S.C. § 423(a)(1).  A person is disabled if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Id.  The physical or mental impairment must be of such severity that he is unable to do his previous work and cannot, considering his age, education, and work experience, engage in any other substantial gainful work that exists in significant numbers in the national economy.  Id.

A.   Sequential Evaluation Process and Burden of Proof

In determining whether a claimant is disabled under the Social Security Act, the Commissioner follows a five-step sequential evaluation process.  See 20 C.F.R. § 404.1520.  At the first step, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity.  Id.

§ 404.1520(1)(4)(i).  If so, the claimant will be found not disabled regardless of his

medical condition, age, education, or work experience.  Id.  At the second step, the

Commissioner determines whether the claimant's impairments are severe.  Id.

§ 404.1520(1)(4)(ii).  If the claimant does not have a severe impairment, he is not

disabled.  Id.  At the third step, the Commissioner compares the severe

impairment(s) with those on the list of specific impairments.  Id.

§ 404.1520(1)(4)(iii)  If it meets or equals a listed impairment, the claimant is

deemed disabled without considering his age, education, or work experience.

Id.  If the impairment is not on the list, the Commissioner proceeds to the fourth

step, assessing the claimant's residual functional capacity ("RFC") and the

demands of his past work.  Id. § 404.1520(1)(4)(iv).  If he is still able to do his past

work, he is not disabled.  Id.  If the claimant cannot perform his past work, the

Commissioner moves to the fifth and final step, evaluating the claimant's ability to

do other work, taking into account his residual capacities, age, education, and work

experience.  Id. § 404.1520(1)(4)(v)  If he cannot do other work, the claimant will

be found disabled.  Id.

      The claimant bears the burden of proof at the first four steps of the

evaluation process.  Boyd, 239 F.3d at 704 (citing Muse v. Sullivan, 925 F.2d 785,

789 (5th Cir. 1991)).  Once he has shown that he is unable to perform his previous

work, the burden shifts to the Commissioner to show that there is other substantial

gainful employment available that the claimant is physically able to perform, and to maintain for a significant period of time, taking into account his exertional and non-exertional limitations.  Watson v. Barnhart, 288 F.3d 212, 217 (5th Cir. 2002).  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform that work.  Anderson v. Sullivan, 887 F.2d 630, 632–33 (5th Cir. 1989).  If the Commissioner finds that the claimant is or is not disabled at any step, the inquiry ends.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

## II.   ALJ's Findings

The ALJ found in Plaintiff's favor at the first two steps, determining that Plaintiff had not been engaged in substantial gainful activity since April 5, 2012,[1] and that he had the severe impairments of "bipolar disorder, cannabis dependence, mild to moderate osteoarthritis of the hip, glenohumeral osteoarthritis and soft tissue tearing of the left shoulder, osteoarthritis of the right ankle, obesity, and a history of carpal tunnel syndrome." (Tr. at 14–15.)  The ALJ determined

---

[1] The ALJ found that Plaintiff previously filed an application for benefits on January 10, 2012, which was denied initially on April 4, 2012, and became administratively final after the claimant failed to appeal. (Tr. at 12.)  In Plaintiff's current claim, he alleges disability since January 1, 2010, which the ALJ stated constituted "an implicit request to reopen the prior unfavorable determination" but that "good cause or other administrative basis does not exist to reopen and revise the unfavorable decision on the prior claim." (Id. (citing 20 CFR 404.987–989)).  Thus, the ALJ's decision addressed the claim at hand and the issue of disability from April 5, 2012. (Id.)

that Plaintiff's hypothyroidism was not severe, stating "the claimant's hypothyroidism has long been treated with levothyroxine and his treatment records reveal his thyroid stimulating hormone has long been within normal levels." (Id. at 15.)

At the third step, the ALJ determined whether Plaintiff's severe impairments met or equaled a listed impairment under C.F.R. Part 404, Subpart B, Appendix 1. (Id. at 15 (citing 20 C.F.R. 404.1520(d), 404.1525 and 404.1526).) The ALJ considered whether the severity of Plaintiff's mental impairments met or medically equaled the "paragraph B" and "paragraph C" criteria under listings 12.04 and 12.09. (Id.) In determining the paragraph B criteria were not satisfied, the ALJ agreed with the State agency assessments finding that the claimant had the "paragraph B" criteria limitations of "moderate restriction of [daily] activities . . . mild difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, and pace; and . . . ha[d] experienced one to two episodes of decompensation, each of extended duration." (Id. at 16.) Accordingly, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. at 16.)

At the fourth step, the ALJ proceeded to assess Plaintiff's RFC, considering "all symptoms and the extent to which [those] symptoms [could]

reasonably be accepted as consistent with the objective medical evidence." (Id. at 17.)  In considering Plaintiff's symptoms, the ALJ undertook the required two-step analysis for RFC determinations, first determining "whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical or diagnostic laboratory techniques that could reasonably be expected to produce the claimant's pain or other symptoms." (Id.)  If an underlying medically determinable impairment is found, the ALJ then evaluates "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit . . . functioning." (Id.)  Those statements that are not supported by objective medical evidence must be evaluated by the ALJ, who then makes a determination of the credibility of those statements based on the entire record.  (Id.)

The ALJ considered Plaintiff's subjective complaints of pain, his limitations, and his relevant work experience.  (Id. at 17.)  The ALJ determined, however, that Plaintiff's claims regarding the intensity, persistence, and limiting effects of his alleged symptoms were not credible, outlining several reasons in her decision for discounting Plaintiff's credibility, including: the lack of a documented medical incident or generalized decline in health corresponding to the alleged onset of disability; employment records indicating Plaintiff maintained employment after the alleged onset of his disabling impairments or disability; Plaintiff's testimony;

and medical evidence that showed an improvement in Plaintiff's impairments with

treatment.  (Id. at 18–22.)  The ALJ then assessed Plaintiff's RFC as follows:

> claimant has the functional residual capacity to lift 20 pounds
> occasionally and 10 pounds frequently, stand and walk up to 6 hours
> in an 8-hour day, and sit 6 hours of an 8-hour day.  The claimant can
> occasionally climb ramps and stairs but he can never climb ladders,
> ropes, and scaffolds.  The claimant can occasionally stoop/bend,
> kneel, crouch, and crawl.  The claimant can occasionally perform
> overhead lifting with the non-dominant arm.  He can understand,
> remember, and carry out detailed but not complex instructions and can
> attend and concentrate on such tasks for extended periods of two or
> more hours at once, can make decisions, can accept instructions, adapt
> to changes in routine work settings, and frequent but not constant fine
> handling and fingering.

 (Tr. at 17, 469–76.).  After determining Plaintiff's RFC and considering testimony

from VE Howard Marnan, the ALJ determined that Plaintiff could perform his past

relevant work as a dental laboratory technician, and was thus not disabled at any

time through the date of the decision.  (Id. at 22–23.)

        After Plaintiff's appeal was denied, Plaintiff brought this action

requesting reversal of the Commissioner's decision.  (Dkt. # 13.)  After reviewing

the entire record, the Magistrate Judge recommended the Commissioner's decision

be affirmed, finding "the ALJ did not commit reversible error and her decision is

supported by substantial evidence."  (Dkt. # 18 at 41.)  Plaintiff timely filed

objections to the Report, objecting to the Magistrate Judge's finding that the ALJ

did not commit multiple errors of law in concluding that Plaintiff could perform

the physical demands of his past relevant work as a dental lab technician and that substantial evidence supported the ALJ's determination.  (Dkt. # 18.)

III.    Whether the ALJ's Decision was Supported by Substantial Evidence and was reached by Proper Application of the Law

Plaintiff's objections reassert the arguments mentioned in his opening and reply briefs.  (Dkt. ## 13, 16, 20.)  Specifically, Plaintiff asserts that: (1) the ALJ erred by improperly discounting Plaintiff's 70% VA disability rating; (2) substantial evidence does not support the ALJ's determination that Plaintiff could perform the physical demands of his past work as a dental lab technician; and (3) the ALJ erred by improperly discounting Plaintiff's subjective complaints. (Dkt. # 20.)  The Magistrate Judge addressed these arguments extensively in her Report, finding them generally without merit.  (Dkt. # 18.)  This Court now reviews those findings de novo.

A.    Whether the ALJ Erred by Failing to Consider Plaintiff's 70% VA Disability Rating

Plaintiff first asserts the ALJ's failure to consider his VA disability rating of 70% constitutes reversible legal error.  (Dkt. # 20 at 2.)  Plaintiff contends that in assessing his physical RFC, the ALJ failed to consider the VA's finding that Plaintiff was 70% disabled from injuries he sustained while in the Army, arguing that the ALJ had the "responsibility to explain how much weight she was affording

this finding and she failed in her duty to do so."  (Id. at 3) (citing Welch v.

Barnhart, 337 F. Supp. 2d 929, 935–36) (S.D. Tex. 2004)).

       The Fifth Circuit has held that the Commissioner is not legally bound

by a VA disability rating because the two agencies apply different criteria, "but

[the rating] is evidence that is entitled to a certain amount of weight and must be

considered by the ALJ."  Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir.

2001).  However, "the relative weight to be given this type of evidence will vary

depending upon the factual circumstances of each case . . . and ALJs need not give

'great weight' to a VA disability determination if they give adequate reasons for

doing so."  Id. at 522.  An ALJ's disagreement with the VA's finding of disability

is not reversible error if the record reflects consideration of that finding.  See

Welch, 337 F. Supp. at 935 (citing Chambliss, 269 F.3d at 522).

       The ALJ relied extensively on Plaintiff's VA records, giving a

detailed account in her report.  (Tr. at 18–22.)  As part of her review of Plaintiff's

VA medical records, the ALJ assessed two sets of records containing a discussion

of Plaintiff's injuries related to the VA disability rating.  (Id. at 19, 453.)  In

discussing the first one, a March 5, 2012 consult examination by Dr. Hector Ortiz,

the ALJ specifically mentioned the VA disability rating.  (Id.)  She noted that

Plaintiff reported "he had a 70% service-connected disability due to injuries

sustained during his days as an airborne ranger."  (Id.)  The ALJ further states that

Dr. Ortiz's report notes that, because of those injuries, Plaintiff "continued to complain of pain in the right ankle, right knee and left shoulder on a daily basis, scaled at about 7/10" and that Dr. Ortiz diagnosed Plaintiff with "a history of a right femoral fracture; history of right tibia/fibula fracture; left shoulder pain; and, a history of bilateral carpal tunnel syndrome." (Id. (citing Ex. 2F.).)

The ALJ additionally assessed a set of VA medical records from August 27, 2012, stating Plaintiff reported service injuries from a jeep accident in 1982. (Tr. at 19.) The ALJ's decision additionally noted that Plaintiff reported at the visit that "he was in a coma for three weeks and that he had sustained a right femur and fibula fracture and a left shoulder injury" as a result of the accident. (Id. (citing Ex. 7F8).) In evaluating these two VA examinations, the ALJ found the August 12, 2012 examination "in marked contrast to Dr. Ortiz's findings [because it] showed the claimant had 5/5 motor strength, intact sensation, equal reflexes, and a good range of motion in the right shoulder." (Id.)

Plaintiff argues that the ALJ's consideration of the VA medical records does not mean she considered the disability rating as part of her analysis. (Dkt. # 20 at 4.) However, the ALJ's decision clearly reflects that in considering Plaintiff's VA records, the ALJ considered the injuries associated with the VA disability rating and found that there was objective medical evidence that contradicted the disabling nature of those injuries, pointing to specific record

evidence in discounting the VA rating.  (Tr. at 18–22, 453.)  This indicates that the ALJ considered the VA rating and chose not to give it great weight.  (Id. at 18–22.)  Where the record reflects the ALJ considered the agencies' findings and underlying evidence, disagreement with those findings alone is not reversible error.  See Kinash v. Callahan, 129 F.3d 736, 739 (5th Cir. 1997).  Plaintiff has failed to demonstrate the ALJ committed legal error in this respect.

 B. Whether Substantial Evidence Supports the ALJ's Finding that Plaintiff Could Perform the Physical Demands of His Past Work as a Dental Lab Technician

 Plaintiff contends the record does not contain substantial evidence to support the ALJ's finding that Plaintiff could perform the physical demands of his previous work as a dental lab technician.  (Dkt. # 20 at 4.)  He argues that the ALJ failed to consider his carpal tunnel syndrome, Parkinson's disease, COPD, thyroid disorder, and his left shoulder arthritis and injuries, as well as the combined impact of these impairments, which render him incapable of "performing the 'frequent handling and fingering' the VE testified is required to perform the job of a dental lab technician" (id. (citing Tr. at 67)), and "the dexterity, arm-hand steadiness, and the controlled precision necessary to work as a dental lab technician." (Id. at 4.)  Plaintiff additionally claims that the ALJ erred by failing to consider the Function Report of his former employer at his past job as a dental lab technician.  (Id. at 5– 6.)

The burden of proving disability falls on Plaintiff, and "the ALJ has a duty to fully develop the facts, or else the decision is not supported by substantial evidence." Leggett, 67 F.3d at 564.  However, in determining whether the Commissioner's findings are supported by substantial evidence, the Court must not reweigh the evidence or substitute its judgment for that of the Commissioner's. Newton, 209 F.3d at 452.  No substantial evidence will be found only if the Commissioner's decision is unsupported by any credible evidence or medical findings.  Boyd, 239 F.3d at 704.  As noted previously, the ALJ stated that in assessing Plaintiff's RFC, she had "considered all symptoms and the extent to which plaintiff's symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and [Social Security Regulations ("SSR")] 96-4p and 96-7p."  (Tr. at 17.)

The ALJ stated in her decision that she gave substantial weight to a determination by Frederick Cremona, a non-examining state agency medical consultant, who stated that Plaintiff was "capable of light exertion with occasional postural limitations except for additional limitations of no climbing of ladders, ropes, or scaffolds and occasional overhead reaching on the left."  (Id. at 22 (citing Ex. 5F)).  Dr. Cremona's report indicated that overhead reaching on the left should be limited to occasional frequency, which the ALJ relied on in adding a limitation

of "overhead occasional lifting with the non-dominant hand." (Id.)  Notably, Dr. Cremona's assessment of Plaintiff's physical capabilities is less limited than that of the ALJ.  For example, the ALJ "given [Plaintiff's] history of carpal tunnel syndrome . . . added a limitation to frequent but not constant fine handling and fingering." (Id. at 22.)

            In regard to Plaintiff's Parkinson's disease and his COPD, although his medical records list a diagnosis for these disorders, he has not established that he is currently impaired by these disorders, nor has he established that either disease prevents him from performing any of his past work.  Regarding his Parkinson's disease, Plaintiff contends "hand tremors from such a condition would prevent him from working as a dental lab technician." (Dkt. # 13 at 10.)  However, there are no medical records cited in support of this contention, and Plaintiff did not list this disorder as part of his disability application.  (Tr. at 203.)  Regarding Plaintiff's thyroid disorder, the ALJ noted in her decision that the evidence indicated Plaintiff's thyroid disorder had "long been treated with levothyroxine and his treatment records reveal his thyroid stimulating hormone has long been within normal levels." (Id. at 15 (citing Ex. 1F134)).  An impairment is not severe if it is "a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Stone, 752 F.2d at 1101 (citing Estran v.

Heckler, 745 F.2d 340 (5th Cir. 1984)).  Accordingly, substantial evidence

supports the finding that the ALJ properly considered Plaintiff's Parkinson's

disorder and COPD in her disability analysis and properly found these impairments

to be not severe.

        Plaintiff additionally asserts that the ALJ erred by failing to consider

the Function Report by Bill Deel, Plaintiff's former employer at his past job as a

dental lab technician.  (Dkt. # 20 at 6.)  To the extent Plaintiff argues the ALJ is

required to consider Mr. Deel's statement, SSR 06–03p merely states that the ALJ

may consider such evidence.  See, 20 C.F.R. § 404.1513(d) (stating ALJ *may*

consider non-medical evidence (emphasis added)).  Accordingly, any failure of the

ALJ to consider such statements is not legal error.  In addition, Plaintiff asserts the

Function Report described Plaintiff's issues with "leg and hand mobility and that

he has difficulty using his hands, lifting, walking, stair climbing, squatting, sitting,

seeing, bending, kneeling, standing, reaching, remembering things, completing

tasks, concentrating and that his movements are painful and limited."  (Dkt. # 20.)

The ALJ's decision indicated she included limitations in Plaintiff's RFC that are

consistent with Mr. Deel's Function Report (Tr. at 17), indicating the ALJ did, in

fact, take such statements into account.  Accordingly, Plaintiff has failed to

demonstrate legal error in this respect.

Plaintiff additionally asserts that substantial evidence does not support the finding that the ALJ considered the combined impact of all of Plaintiff's impairments.  (Dkt. # 20 at 6.)  However, the ALJ's decision states that she found the claimant did not have "an impairment or *combination of impairments*" that met or medically equaled a listed impairment.  (Tr. at 15) (emphasis added).  This indicates that, in addition to the ALJ's extensive review of Plaintiff's medical records regarding each individual impairment, the ALJ also considered the impairments in combination.  Additionally, as previously noted, the ALJ included limitations in Plaintiff's RFC that took his impairments into account.  (Id. at 17.)  Substantial evidence supports the finding that the ALJ considered Plaintiff's combined impairments and Plaintiff has failed to establish error in this respect.

C.  <u>Whether the ALJ Erred by Improperly Discounting Plaintiff's Subjective Complaints</u>

Plaintiff asserts the ALJ erred in assessing the severity of Plaintiff's subjective complaints of physical and mental limitations.  (Dkt. # 20 at 7.)  Specifically, Plaintiff argues that the ALJ engaged in an improper evaluation of the record in assessing the reliability of his subjective complaints about pain and by failing to consider the side effects of Plaintiff's medications.  (Id.)

Pursuant to Social Security Regulation 20 C.F.R. § 4.1529(c), the factors relevant to assessing pain are listed as: (1) activities of daily living; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and

aggravating factors; (4) type, dosage, and effectiveness of medications; (5) other

medical treatment; (6) measures used to relieve the pain; and (7) other factors

concerning limitations and restrictions.  20 CFR § 404.1529(c)(3).  The ALJ is

required to consider Plaintiff's subjective statements about pain and other

symptoms, "[h]owever, statements about . . . pain or other symptoms will not alone

establish that you are disabled; there must be medical signs and laboratory findings

which show that you have a medical impairment(s) which could reasonably be

expected to produce the pain or other symptoms alleged." Id. § 404.1529(a).

Plaintiff's subjective complaints "must also be corroborated by medical evidence."

Chambliss, 269 F.3d at 522 (citing Houston v. Sullivan, 895 F.2d 1012, 1016

(5th Cir. 1989)).

       First, Plaintiff contends the ALJ improperly considered his criminal

history in assessing his subjective complaints, stating this evidence was prejudicial

and is not one of the enumerated factors under 20 CFR § 404.1529 and SSR 96-7.

(Dkt. # 20 at 7–9.)  The ALJ's discussion of Plaintiff's arrest record appears in a

footnote while the ALJ discussed his bipolar disorder.  The ALJ's footnote stated

that "[t]he claimant testified he was arrested in 1995 for having LSD in his car.  He

reported he had previously been arrested in 1989 for auto theft for which he spent

30 days in [jail].  The claimant testified he received a total of 11 years' deferred

sentence on both charges."  (Tr. at 20, n.2)  Although the ALJ referenced

Plaintiff's criminal history, the record reflects that the reference was merely context and did not weigh on the ALJ's determination.  Instead, the ALJ states that VA records prior to the time at issue indicated "diagnoses of cannabis abuse and alcohol dependence."  (Id. at 20.)  It is clear, however, that the ALJ took Plaintiff's bipolar disorder into account, noting "the evidence received through the hearing level shows the claimant's bipolar disorder has responded to treatment and is substantially attenuated, if not controlled, with medication therapy."  (Id.)  This indicates the ALJ took Plaintiff's bipolar disorder into account notwithstanding her statements regarding Plaintiff's arrest history, and Plaintiff has failed to demonstrate any prejudicial error in this respect.

        Plaintiff next contends that the ALJ erred by mischaracterizing and misunderstanding Plaintiff's military service.  (Dkt. # 20.)  Specifically, he argues the ALJ inappropriately questioned the sincerity of Plaintiff's testimony regarding his service in the Army as being in the infantry and the airborne rangers, arguing there is no inconsistency in this statement as most Army rangers are in the infantry.  (Id.)  The discussion in question appears in the ALJ's assessment of Plaintiff's August 27, 2012 VA records where plaintiff reported he was injured in a 1982 Jeep accident in the service.  (Tr. at 19.)  The ALJ states in a footnote that Plaintiff "told the VA doctor that he had been in the infantry (Ex. 7F49), but Dr. Ortiz references the claimant as being injured during his airborne ranger days."  (Id. at 19.)  As was

the case regarding the ALJ's statement regarding Plaintiff's criminal history, it is clear from the face of the record the ALJ did not make any credibility assessment of Plaintiff's injuries because of his military service, as the ALJ does not list Plaintiff's military service or any discrepancy of such as a reason for finding his claims not credible.  Additionally, the ALJ took the injuries at that visit into account, adding a limitation to "occasionally perform[ing] overhead lifting with the non-dominant hand."  (Id. at 17.)  Plaintiff has failed to demonstrate the ALJ erred by mischaracterizing his military service.

Plaintiff asserts that the ALJ also improperly considered Plaintiff's trip to Puerto Rico in assessing Plaintiff's credibility.  (Dkt. # 20 at 8.)  The ALJ noted that his trip to Puerto Rico in December 2012 suggested "treatment of his bipolar disorder with Risperdal at the time was largely effective."  (Tr. at 19.)  Additionally, the ALJ stated that Plaintiff's "ability to take fairly long trips to and from Puerto Rico indicates to me that his hip, ankle, shoulder, and hand/wrist pain were substantially attenuated with pain medication and these impairments did not limit his ability to travel."  (Id.)  Further, to be considered disabling, "pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment."  Chambliss, 269 F.3d at 522 (internal citations omitted).  Plaintiff testified that he had derived relief from using capsaicin cream on his shoulder and taking his pain medication, without which he "wouldn't be able to get up and about."  (Id. at 49.)

Because Plaintiff's pain was alleviated by medication, it was correctly found not to be disabling.  See Johnson v. Sullivan, 894 F.2d 683, 686 (5th Cir. 1990) (stating the Secretary properly found the claimant's pain not to be disabling because his pain was alleviated by medication).  Accordingly, Plaintiff has failed to demonstrate that his pain was "constant, unremitting, and wholly unresponsive to therapeutic treatment," and Plaintiff has failed to demonstrate error in this respect.

Plaintiff also claims that the ALJ erred by failing to consider the side effects of his medications in assessing his RFC.  (Dkt. # 20 at 9.)  Plaintiff listed the side effects of his medications as follows: "(1) risperidone causes sleepiness, audio and visual hallucinations, and vision problems; (2) tramadol causes sleepiness, trouble breathing, numbness, and blurry vision; and (3) hydroxyzine causes itchiness."  (Dkt. # 13 at 18.)

Plaintiff claimed Risperdal caused him to experience audio and visual hallucinations prior to the relevant time period.  However, the ALJ noted in her decision that October 17, 2012 medical records reveal "the claimant admitted obtaining partial benefit from Risperdal."  (Tr. at 20 (citing Ex. 7F31–35)).  The ALJ also explained that medical records through August 2013 indicated Plaintiff "continued to report deriving benefit from Risperdal" during the relevant time period.  (Id. at 21.)  Regarding the side effects of plaintiff's Tramadol, as previously noted, Plaintiff testified that "if it wasn't for my pain pills, the

Tramadol, I wouldn't be able to get up and about." (Id. at 49.)  The record does not indicate Plaintiff complained of any side effects of his medications, either at the administrative hearing, or at a May 13, 2013 consultation for orthopedic surgery.  (Id. at 599-601.)  There is no evidence in the record to indicate Plaintiff experiences any side effects that have limited his ability to work during the dates relevant to this decision.  Accordingly, Plaintiff has failed to demonstrate the ALJ erred in this respect.

The Court finds that the ALJ's decision took into account Plaintiff's extensive medical history and other objective evidence in the record, and there is substantial evidence to support the ALJ's decision that Plaintiff could perform the physical demands of his past work as a dental lab technician.

<u>CONCLUSION</u>

For the reasons stated above, the Court **ADOPTS** the Report (Dkt. # 18), **AFFIRMS** the SSA's final decision, and **DISMISSES** the case with prejudice in favor of Defendant Carolyn Colvin, in her official capacity as Acting Commissioner of the SSA.

**IT IS SO ORDERED.**

**DATED:** San Antonio,Texas, November 10, 2016.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE

24